IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID GUZMAN,

        Plaintiff,

vs.                                        No. CIV 97-1279 MV/WWD

MARTIN CHAVEZ and
JOSEPH POLISAR, in their
individual capacities,

        Defendants.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

THIS MATTER is before the Court following the conclusion of a bench trial, lasting from October 13 to October 15, 1998, and ending on January 4, 1999. The Court, after considering all the evidence and relevant law, finds that Plaintiff David Guzman has not met his burden of proof on his discrimination claim, but has prevailed on his First Amendment retaliation claim.

**Background**

Plaintiff David Guzman, a police sergeant who has attempted repeatedly to become a lieutenant, filed a complaint in this Court invoking 42 U.S.C. § 1983 against Defendants Polisar, Chavez, and then-Defendant Sal Baragiola in their individual and official capacities, alleging that Defendants discriminated against him because of his Hispanic origin, retaliated against him for the lawful exercise of his First Amendment rights, and violated his due process rights by circumventing certain protections of the Albuquerque Police Department's (APD) merit selection system. During motion practice the Court dismissed the due process claim. Mr. Guzman stipulated to the dismissal of Defendant Baragiola, agreed that he was maintaining a claim only with reference to the 1995

promotional process, and dismissed the City of Albuquerque from the action. At trial, the Court clarified that the dismissal of the City also dismissed Defendants Chavez and Polisar in their official capacities, ruled that Mr. Guzman's discrimination claim could only proceed on a disparate treatment theory, and denied Defendants' motion for qualified immunity.

Mr. Guzman has on seven different occasions failed to successfully complete the tests necessary for promotion to lieutenant, which consist of two parts. The Department first administers a written examination. Those that pass are invited to take part in an oral assessment of their qualifications. In that oral assessment, called the assessment center, candidates for promotion face a variety of simulated situations which they are expected to address, and are graded by other police officers brought in from outside the APD. The exercises are designed with the help of APD officers who are subject matter experts. It is undisputed that Mr. Guzman has successfully passed seven written examinations. It is also undisputed that Mr. Guzman has never been a successful oral assessment candidate.

Mr. Guzman testified that after his first attempt at promotion, members of the Department told him that he failed the oral assessment because he needed more education and needed to improve his public speaking. Mr. Guzman stated that he then diligently sought to further educate himself and practice public speaking, joining several Toastmasters clubs, completing the Dale Carnegie Effective Speaking School, obtaining a Masters of Arts degree in security management, and participating both as an instructor and a candidate in several mock assessment centers. Mr. Guzman further stated that he has held leadership positions in the Chicano Police Officers Association, the Latino Peace Officers Association, and the New Mexico Peace Officers Association. In 1995, Mr. Guzman's renewed failure to receive a promotion to lieutenant precipitated this litigation.

Prior to bringing this action Mr. Guzman was a party to other litigation in 1994 where he and other police officers sued the City, its Mayor Martin Chavez, and its Chief of Police Joseph Polisar, and where he complained of civil rights violations (the *Alianza* lawsuit). In May, 1995 Mr. Guzman participated in a dismissal of the suit, pursuant to his understanding that the City sought, along with the plaintiffs, to have the issues raised by those officers resolved through non-binding mediation.

During that mediation process Mr. Guzman and his attorney attempted unsuccessfully to obtain more information concerning the 1993 assessment center, which Mr. Guzman had failed for the sixth time. Specifically Mr. Guzman, who joined the APD in 1976 and had diligently tried to improve his performance over the years, requested to see the actual scoring sheets the assessors had used, in part to establish for himself his level of achievement during the testing exercises, and in part to be able to negotiate a resolution to his claim that he had unlawfully been denied a promotion. His attorney during the mediation, Ms. Judith Oliva, testified that the refusal to provide Mr. Guzman with his testing records ended the mediation, since she and Mr. Guzman had no other effective way of looking for bias in the assessment center process, or of gathering any information from the test to demonstrate Mr. Guzman's successfully completed portions. Here was a man who had been extremely successful in the field, had enjoyed a flourishing career, and had extensively prepared for the oral assessments, but who when asked to verbalize his approach to solving a fictional problem, had failed. Without access to the test results and notes, Mr. Guzman and his attorney were effectively denied any chance of persuading anyone of Mr. Guzman's strengths. They simply could not argue against something they had not seen or read. Ms. Oliva also testified that the defendants in the *Alianza* litigation refused outright to mediate the claims of Mr. Gilbert Najar, another *Alianza* plaintiff who also was active in Hispanic police unions. Defendants at the trial presented no

explanation for this refusal.

In addition to this testimony, Mr. Guzman presented that of fellow officers Mr. Gil Najar, Mr. Billy Ray Pounders, Mr. Oscar Medrano, Ms. Anna Griego, Mr. James Torrez, and of his wife Mrs. Maria Guzman. Defendants presented the testimony of Ms. Deborah Martinez, then an employee in the City's Human Resources Department, and Ms. Susan Bryan, a testing and training analyst in the Department. Neither Mr. Chavez nor Mr. Polisar testified, or indeed even appeared at trial.

During Mr. Guzman's case-in-chief, Mr. Guzman's counsel stated that, based on available information, it was her belief that Mr. Guzman's 1995 assessment center testing files no longer existed. During the second day of trial near the close of Mr. Guzman's case-in-chief, however, Defendants' counsel revealed that the missing files were available but had not been produced; allegedly Mr. Guzman failed to file a formal discovery request. The Court, recessing Mr. Guzman's case, ordered the production of documents at issue, directed Defendants to begin presenting evidence, and specifically allowed Mr. Guzman the opportunity to add additional evidence once he had seen the relevant documents. After Defendants had presented the testimony of then-available witnesses the Court recessed the trial pending the presentation of additional Plaintiff's evidence. Trial resumed and concluded on January 4 with neither side calling additional witnesses.

### Discussion

To prove a disparate treatment claim in a § 1983 action, a plaintiff may resort, in the absence of direct evidence, to the burden shifting approach first set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Helland v. South Bend Community School Corp.*, 93 F.3d 327 (7th Cir. 1996), *cert. denied*, 117 S.Ct. 769 (1997). Mr. Guzman has conceded that he has no direct

evidence of national origin discrimination on the part of Mr. Chavez or Mr. Polisar. Thus, under the

well-worn *McDonnell Douglas* standard, Mr. Guzman must first

> carry the initial burden of establishing a prima facie case of discrimination. Once a prima facie case of discrimination is made out, the burden of production shifts to the defendant to articulate some legitimate nondiscriminatory reason for its action. If the defendant does so, the plaintiff must be given the opportunity to show by a preponderance of the evidence that the reason offered by the defendant is mere pretext.

*Ramsey v. City and County of Denver*, 907 F.2d 1004, 1007 (10th Cir. 1990), *cert. denied*, 506 U.S.

907 (1992).

The proof necessary to establish a prima facie case is not onerous. *Shapolia v. Los Alamos*

*National Laboratory*, 992 F.2d 1033 (10th Cir. 1993), *citing Texas Dept. of Community Affairs v.*

*Burdine*, 450 U.S. 248, 253 (1981). In Mr. Guzman's case, to meet his prima facie burden he must

show that he was a member of a protected class, was qualified for the position he sought, was

rejected, and that his employer promoted someone who was not a member of the protected class.

*Kenworthy v. Conoco, Inc.*, 972 F.2d 1462, 1469 (10th Cir. 1992).

Assuming Mr. Guzman meets his initial burden, Defendants would then have the burden of

production to show a legitimate, nondiscriminatory reason for their actions. Once a defendant

succeeds in carrying this burden of production, the shifting burden approach of *McDonnell Douglas*

is no longer relevant. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510 (1993). Instead, the trier

of fact must proceed to the ultimate question: whether the plaintiff has proved intentional

discrimination. *Id.* at 509.

The proof required for a First Amendment retaliation claim is in four parts, with the first two

being legal rulings and the other two being factual findings. *Wulf v. City of Wichita*, 883 F.2d 842,

856-57 (10th Cir. 1989); *Dill v. City of Edmond, Okl.*, 155 F.3d 1193, 1201 (10th Cir. 1998). The questions of law are whether an employee's speech involves a matter of public concern, and if so, whether the employee's interests in commenting on such matters, balanced "against the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees," *Dill*, 155 F.3d at 1201, *quoting Pickering v. Board of Education*, 391 U.S. 563, 568 (1968), outweigh the interests of the employer. *Dill*, 155 F.3d at 1201. If a court concludes that the employee's interests tip the balance, then a factfinder must consider whether a plaintiff has proven "that the speech was a substantial factor or a motivating factor in the detrimental employment decision." *Dill*, 155 F.2d at 1202, *quoting Gardetto v. Mason*, 100 F.3d 803, 811 (10th Cir. 1996). If a plaintiff "makes such a showing, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech." *Dill*, 155 F.3d at 1202, *citing Gardetto*, 100 F.3d at 811.

With these principles in mind, the Court turns to its findings of fact and conclusions of law.

**Findings of Fact**

1.    Plaintiff David Guzman was a police officer with the Albuquerque Police Department from June, 1976 until he resigned in August, 1998.

2.    Mr. Guzman is of Hispanic national origin.

3.    Mr. Guzman was promoted to Sergeant in 1983, and remained at that rank until his resignation.

4.    During his career, Mr. Guzman has applied for and taken the lieutenant's promotion exam on seven occasions.

6

5.    On each of those occasions, Mr. Guzman passed the written portion of the exam, but failed the oral assessment center portion.

6.    Mr. Guzman has diligently striven to improve his skills, successfully completing an effective speaking course, joining public speaking organizations, obtaining a Bachelor's Degree in Criminology followed by a Master's Degree in Security Management, and acting both as a candidate and an instructor in mock assessment centers.

7.    Throughout his career with the Albuquerque Police Department, Mr. Guzman was active and vocal in several police unions, including the Chicano Police Officers' Association (CPOA), the Latino Peace Officers' Association (LPOA), and the New Mexico Peace Officers' Association.

8.    As part of his union activities, Mr. Guzman met with Mr. Chavez when he was a mayoral candidate and discussed the discrimination record of the then chief of police in an attempt to obtain Mr. Chavez's assistance in addressing these concerns in the selection of the next chief.

9.    During that meeting, Mr. Guzman also raised his concerns pertaining to perceived discrimination in training, promotions, transfers, and assignments. Mr. Chavez was upset at the meeting, believing that the police associations were conditioning their endorsement of his candidacy on a commitment from him to appoint a new chief of police if elected. Mr. Chavez refused to discuss the associations' concerns.

10.    The police unions endorsed another candidate.

11.    Mr. Guzman again met with Mr. Chavez, after Mr. Chavez became Mayor, in an attempt to secure Mr. Chavez's assistance in directing Mr. Polisar, by then Chief of Police, to meet

with Mr. Guzman and Mr. Gil Najar, respectively presidents of the LPOA and the CPOA, to discuss issues in the police force of concern to these associations' members.

12.     In this meeting, Mr. Chavez was curt, refused to shake hands with either Mr. Guzman or Mr. Najar, and refused to ask Mr. Polisar to meet with representatives of the police unions. Mr. Guzman then threatened to go to the media and allege that Mr. Chavez was anti-Hispanic. Mr. Chavez became very angry, turned red, and stated: "If you paint me into a corner, you are going to force me to fight my way out, and I guarantee you, I have very sharp elbows." The meeting ended shortly thereafter.

13.     In the mid-1980's, Mr. Guzman had an altercation with Mr. Polisar when the latter was still a lieutenant and Mr. Guzman worked in the Department's Internal Affairs section. Upon Mr. Guzman's transmitting a request from his supervisor that Mr. Polisar be interviewed for an investigation into police intelligence files kept on politicians, Mr. Polisar became verbally abusive and Mr. Guzman and Mr. Polisar exchanged insults.

14.     Once Mr. Polisar became the chief of police, he consistently refused to meet with Mr. Guzman to discuss discrimination concerns, despite Mr. Guzman's several telephone calls and one letter written as president of the LPOA.

15.     Mr. Guzman was a named plaintiff in *Najar et al. v. City of Albuquerque, et al.*, No. CIV 94-837 M, filed July 26, 1994, the *Alianza* lawsuit, where Defendants Chavez and Polisar, then Mayor and Chief of Police of the City of Albuquerque, were named defendants, and where the plaintiffs alleged various forms of anti-Hispanic discrimination in the Albuquerque Police Department.

16.     Mr. Guzman agreed to dismiss those claims in return for Defendants' agreement to toll

statutes of limitations.

17. The tolling agreement signed by the City and the *Alianza* plaintiffs' representative shows that those plaintiffs could reasonably expect that the *Alianza* defendants would mediate their claims in good faith, and that those defendants wished to have the issues raised in the *Alianza* litigation resolved through non-binding mediation.

18. Mr. Guzman's main goal in seeking mediation was the disclosure of his testing files for the 1993 promotional process, so that he could ascertain for himself the reasons for his failing the oral assessment exam despite his extensive preparation and prior testing experience, so that he could better prepare for upcoming examinations, and so that he could identify any possible bias assessors might have exhibited in their evaluations.

19. After the signing of the tolling agreement, the *Alianza* defendants refused to mediate Mr. Najar's claim in that lawsuit. Others in the litigation, with the exception of Mr. Guzman, had their claims resolved.

20. Mr. Guzman participated in three mediation sessions.

21. Mr. Guzman was ready and willing to provide guarantees of confidentiality of the mediation process.

22. Defendants at one point during the mediation suggested a blind comparison of test scores by an independent party, but never carried through with their offer.

23. Mr. Guzman was not able to obtain his testing records during the mediation, despite his efforts and the efforts of his attorney Ms. Judith Oliva.

24. During the mediation, the only actual reason Defendants gave for nonpromotion was that Plaintiff did not make the promotion list.

25. As a result of the mediation impasse, Mr. Guzman was forced to abandon his mediation efforts.

26. The *Alianza* defendants did not mediate the claims of two of the most active and vocal members of the Hispanic police unions.

27. The promotion list for the 1995 lieutenant's exam included Kyle Baxter, John DeBuck, Judd Shaffer, Paul Heatley, Michael Callihan, James Spain, Joseph Silva, Sergio Mercado, Gretchen Taute, and William Moe.

28. The City of Albuquerque's Human Resources Department developed both the written portion and the assessment center portion of the 1995 lieutenant's promotional exam.

29. The Human Resources Department developed the promotion tests with the help of subject matter experts from within the Albuquerque Police Department.

30. In developing the tests, Department employee Ms. Deborah Martinez used the federal government's Uniform Guidelines on Employee Selection.

31. The assessors who scored the exercises used in the assessment center were from out-of-state law enforcement departments.

32. The scoring process for the assessment center included extensive security measures.

33. Neither Martin Chavez nor Joseph Polisar tried to influence the 1995 lieutenant promotional process.

34. Mr. Guzman signed a confidentiality agreement before beginning the 1995 testing process.

35. Mr. Guzman has shown that his speech on discrimination in the Albuquerque Police Department was a substantial factor or a motivating factor in Defendants' refusal to disclose, despite the existence of a signed confidentiality agreement and other guarantees of

confidentiality, his testing records so that any of his efforts at mediation necessarily failed.

36.     Defendants have failed to show that they would have taken the same action, even in the absence of Mr. Guzman's protected speech.

## Conclusions of Law

1.     This Court has jurisdiction over the subject matter and parties.

2.     Assuming, without deciding, that Plaintiff David Guzman has made out a prima facie case of discrimination, Defendants have shown legitimate, non-discriminatory reasons why he was not promoted to lieutenant in 1995. Specifically, Defendants have shown, through the testimony of Deborah Martinez and Susan Bryan, that the City of Albuquerque's testing process incorporates a multitude of procedural safeguards to ensure the fairness of the process.

3.     The 1995 promotional testing process was free of the influences of Defendants Chavez and Polisar.

4.     Mr. Guzman has not shown that the stated reasons for his failure to be promoted were pretextual.

5.     The remarks attributed to Defendant Mr. Martin Chavez do not provide evidence of discriminatory animus. At best, those remarks reflect the friction that developed between Mr. Chavez and Mr. Guzman when Mr. Guzman actively pressed the concerns of the police unions he represented.

6.     The remarks attributed to Defendant Mr. Joseph Polisar do not provide evidence of discriminatory animus. At best, those remarks reflect the friction that developed between

Mr. Polisar and Mr. Guzman when Mr. Guzman sought, as part of his job duties, to have Mr. Polisar participate in an Internal Affairs interview.

7.     Even if Defendants' remarks could constitute discriminatory animus, Mr. Guzman has failed to show a nexus between those remarks and the testing process. *See Cone v. Longmont United Hospital Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994).

8.     Mr. Guzman's efforts in raising discrimination issues within the police force are matters of public concern. *See Connick v. Myers*, 461 U.S. 138, 148 n.8 (1983); *Moore v. City of Wynnewood*, 57 F.3d 924, 932 (10th Cir. 1995).

9.     Defendants have not presented any evidence of disruption of services resulting from Mr. Guzman's speech. *See Dill*, 155 F.3d at 1203.

10.    Mr. Guzman's interests in speaking out on matters of discrimination as a union representative outweigh the City of Albuquerque's interest, as an employer, in promoting the efficiency of the public services it performs through its employees.

11.    Defendants retaliated against Plaintiff, by failing to mediate his claims in the *Alianza* litigation in good faith, for the lawful exercise of Plaintiff's First Amendment rights.

12.    Defendants' actions constitute bad faith with respect to the *Alianza* mediation. Ms. Oliva never had an opportunity to meaningfully examine Mr. Guzman's claims in mediation, and was effectively prevented from presenting arguments or attempting to persuade Defendants to resolve Mr. Guzman's *Alianza* claims. In essence, Defendants' refusal to mediate in good faith gave Plaintiff no tools with which to seek the resolution of his claims.

**Damages**

In testimony, Mr. Guzman presented some evidence of the impact the failed mediation had on him. He testified to frustration, embarrassment, and to his anger when he discovered that Defendants were not bargaining in good faith during the mediation. The forced end to the mediation process left him not only without a remedy, but without the means to ensure that he could succeed in the next promotional process: Mr. Guzman is still in the dark as to why he repeatedly kept failing the oral assessment centers. Mr. Guzman also explained that he felt singled out for his union activities, and that his experience at APD was meant to discourage people from standing up for their rights. Maria Guzman, Mr. Guzman's wife, testified about the stress her husband was experiencing after continued rejection in the promotional process, and explained how that stress, particularly related to the *Alianza* litigation and the 1995 promotional process, culminated in Mr. Guzman's developing a temporary case of Bell's palsy. The Court concludes, therefore, that Plaintiff has presented sufficient evidence of emotional distress to merit an award of $75,000.00 as compensatory damages.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

January 29, 1999

Counsel for Plaintiff
Donna L Dagnall
Peter Rames
Brian Thomas

Counsel for Defendants
Bruce T. Thompson
Sharon Walton